[Cite as *State v. Ayers*, 2012-Ohio-3175.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24829 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-1010 |
| v. | : | |
| | : | (Criminal Appeal from |
| NESBITT L. AYERS | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

MICHAEL T. COLUMBUS, Atty. Reg. #0076799, 2100 First National Plaza, 130 West Second Street, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HARSHA, J. (Sitting by Assignment)

{¶ 1}     Upon a partial reversal and remand by this court, the trial court found Nesbitt

Ayers guilty of a felony for selling marijuana to David Dewberry.   Ayers appeals and argues

the record is void of any evidence to establish the exchange was a traditional sale. He contends at best the evidence is only sufficient to support a finding that the transaction was a gift, so his conviction should be a misdemeanor. However, the record contains evidence from which the trier of fact could reasonably conclude that Ayers gave Dewberry marijuana in exchange for money. Such evidence, if believed, could convince the average mind beyond a reasonable doubt that Ayers and Dewberry engaged in a traditional sale as opposed to a gift transaction. Thus, sufficient evidence supports Ayers' conviction for a felony, and we affirm the trial court's judgment.

## I. Procedural Background

{¶ 2} The state indicted Ayers for one court of trafficking in drugs in violation of R.C. 2925.03(A)(1), a felony of the fifth degree. Early in 2010 Ayers received a trial to the court, which resulted in his conviction as charged in the indictment. The trial court imposed the sentence for a fifth degree felony under R.C. 2925.03(C)(3)(a).

{¶ 3} On appeal we sustained in part Ayers' first assignment of error, which contended, "[t]he verdict was not supported by sufficient evidence." *State v. Ayers*, 194 Ohio App.3d 812, 2011-Ohio-3500, 958 N.E.2d 222, ¶ 6 (2d Dist.) ("*Ayers I*"). The trial court found Ayers guilty of violating R.C. 2925.03(A)(1), which provides: "No person shall knowingly * * * [s]ell or offer to sell a controlled substance." For purposes of an (A)(1) violation, a "sale" includes a gift of marijuana. *See* R.C. 2925.01(A) and R.C. 3719.01(AA). In other words, for purposes of defining the offense, a traditional sale and a gift are the same thing. We concluded that the evidence was sufficient to establish that the transfer of drugs to

Dewberry was either a gift or a sale. *Ayers I* at ¶ 18. Therefore, we affirmed Ayers' conviction for trafficking in drugs as provided by R.C. 2925.03(A)(1).

{¶ 4} However, Ayers argued his conviction for a fifth-degree felony was not supported by sufficient evidence because nothing in the record established that he sold or offered to sell the marijuana to Dewberry. Ayers pointed to the distinction between a sale and gift in the penalty provisions contained in R.C. 2925.03(C)(3)(a) and (g). Under the general penalty provision in subsection (3)(a), trafficking in marijuana is a felony of the fifth degree. However, under subsection (3)(g) as it read at that time,[1] if the transaction is a gift of 20 grams or less (a de minimis gift), the crime is only a minor misdemeanor on the first offense and misdemeanor of the third degree thereafter. In other words, for purposes of establishing the appropriate penalty for trafficking marijuana, a traditional sale and a gift are not the same thing.

{¶ 5} We determined that the trial court failed to make a factual determination of whether the transaction was a gift or sale for purposes of imposing the appropriate penalty under R.C. 2925.03(C). Because it was necessary to make that determination in order to impose the correct sentence, we reversed in part and remanded for further consideration. *Ayers I* at ¶ 18-19. After the trial court proceeded upon our remand and found the evidence established the transfer was a traditional sale for purposes of sentencing, Ayers filed this appeal.

II. Assignment of Error

---

[1] After *Ayers I* the legislature amended R.C. 2925.03, and the provision on de minimis gifts now appears in subsection (C)(3)(h).

{¶ 6}     In his sole assignment of error Ayers claims:  "THE STATE FAILED

TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING

THAT THE TRANSACTION WAS A SALE."

### III. Standard of Review

{¶ 7}     A sufficiency-of-the-evidence argument challenges whether the state has

presented adequate evidence on each element of the offense to allow the case to go to the fact

finder or sustain the verdict as a matter of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386,

678 N.E.2d 541 (1997).  The proper test to apply to the inquiry is the one set forth in

paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted

at trial to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt.   The relevant

inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt.

Evidence presented to prove the element of a crime may be direct or

circumstantial, and both have the same probative value.

*Jenks* at paragraph one of the syllabus.

### IV.   Sale or Gift?

{¶ 8}     The essence of Ayers' argument in this appeal is that the record contains no

evidence to establish the transfer of drugs was anything but a gift.[2]   And our review of the record confirms that no law enforcement officer saw any exchange of money or other thing of value in return for the drug.   However, there is some evidence in the record to support the trial court's finding of a traditional sale for purposes of R.C. 2925.03(C).

## A.  Facts

{¶ 9}   As we noted in *Ayers I*, this transaction occurred in a high crime area in Dayton at approximately 9:30 p.m.   Dayton police officer Keith Coberly was patrolling the high-drug-activity area near Fourth and Main Streets, when he noticed Ayers standing on the corner of the next intersection at Fourth and Jefferson Streets.   Officer Coberly is a 20-year veteran of the Dayton police department who has worked in drug interdiction for nine years.   Officer Coberly recognized Ayers and knew him as a downtown drug dealer.   Officer Coberly watched with binoculars as Ayers walked to the RTA bus shelter on the corner of Fourth and Main Streets.   Officer Coberly knew that Ayers had previously been "trespassed off" all RTA property.

{¶ 10}   Ayers approached a man, later identified as David Dewberry, who was sitting on a bench inside the RTA bus shelter.   The area was well lit, and Officer Coberly could observe both men's movements.   Officer Coberly watched as Ayers reached forward with his right hand and handed something to Dewberry, who took the item with his left hand, placed it into a small white piece of paper he had on his knee, folded it up, and placed it in his right

---

[2]In his earlier appeal Ayers disputed whether he gave Dewberry anything, claiming the two merely "fist bumped" as a greeting. In this appeal Ayers limits his argument to "gifting."

front pants pocket. Officer Coberly could not see what the item was, but based upon his experience, he believed that he had just witnessed a hand-to-hand drug transaction. However, Coberly did not see Dewberry give Ayers any money or other thing in exchange for the item.

{¶ 11} After the exchange, Ayers walked away south on Main Street, and Dewberry walked north on Main Street. Officer Coberly radioed Officer August and told him to arrest Ayers for trespassing on RTA property. Officer Coberly also radioed Officer Hurley and told him that Dewberry was walking in his direction and to stop him because Dewberry had drugs in his right front pants pocket. Ayers was arrested for trespassing and searched but he had no drugs on his person. He did have four five dollar bills, however. Officer Hurley stopped and searched Dewberry, finding 1.2 grams of marijuana wrapped in a white piece of paper in Dewberry's right front pants pocket. Dewberry gave police a written statement admitting that he had gotten the marijuana from Ayers. He also indicated he paid Ayers with two five dollar bills. However, at trial, Dewberry denied purchasing or getting any marijuana from the defendant. Dewberry claimed that he gave police a false statement so he did not have to go to jail.

## B. Analysis

{¶ 12} This seemingly simple case is rendered otherwise by virtue of the structure of the statutory scheme for the offense of trafficking in drugs. R.C. 2925.03(A)(1) prohibits anyone from knowingly selling or offering to sell a controlled substance. Marijuana is a controlled substance. R.C. 3719.01(C); R.C. 3719.41, Schedule I(C)(19). Apparently due to the myriad of forms, potency and habit-forming characteristics of various controlled

substances, the legislature has created a classification of offenses and penalties that varies according to the nature of the substance, the quantity involved, and the character of the transaction. In this instance R.C. 2925.03(C)(3) provides if the controlled substance is marijuana, "whoever violates division (A) of this section is guilty of trafficking in marihuana." Subsection (C)(3) goes on to prescribe the penalty for the offense of trafficking in marijuana by providing various potential penalty provisions, only two of which are relevant here. Under the "general" penalty section for sales listed in R.C. 2925.03(C)(3)(a), the offense of trafficking in marijuana is a felony of the fifth degree. However, under former R.C. 2925.03(C)(3)(g), if the transaction involves a gift of twenty grams or less, the crime of trafficking in marijuana is a minor misdemeanor on the first offense and a misdemeanor of the third degree thereafter.

{¶ 13} This distinction between a sale and a de minimis gift appears in the penalty provisions of the statute and at first blush would not seem to change the elements of the offense, which are found in R.C. 2925.03(A). However, the Supreme Court of Ohio has held that in an analogous situation, where a fact transforms a crime by increasing its degree, rather than simply enhancing its penalty, the fact becomes an essential element of the crime and must be proved by the state. *See State v. Adams*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987) (Prior convictions used to enhance the penalty for an OMVI offense did not constitute essential elements of the case – they were strictly a sentencing consideration for the court. But where the prior convictions change the degree of the charged offense, the crime itself is transformed and requires proof of that essential element).

{¶ 14} Here, the factual distinction between a traditional sale and a de minimis gift

would involve a change in the degree of the offense from a felony to a misdemeanor because only 1.2 grams of marijuana are involved. Thus, in Ayers' first appeal, we concluded the state must prove and a trial court must designate which of the two factual scenarios exists before it can impose an appropriate sentence. *See Ayers I* at ¶ 16-19.

{¶ 15} Ayers is undeniably correct in his assertion that Officer Coberly saw no exchange of money or anything of value. Ayers is also correct that at trial, Dewberry recanted his initial written statement to the police. In that document, which the state introduced as Exhibit 3 without objection, Dewberry indicated he paid Ayers ten dollars for the marijuana, giving him two five dollar bills. At trial Dewberry proclaimed his initial statement was untrue and motivated by a desire to stay out of jail. Dewberry testified he did not get marijuana from Ayers and that the drug was his.

{¶ 16} Even though the state offered his prior inconsistent statement into evidence without objection, this evidence was admissible solely for the purpose of impeachment and not available as substantive evidence. *See* 1 Gianelli, *Gianelli Evidence*, Section 613.3 (3d.Ed.2010). We presume the trial court correctly applied the law in this regard. *See State v. Ritchey*, 64 Ohio St.3d 353, 357-58, 595 N.E.2d 915 (1992). Thus, Dewberry's written statement was not available to establish any element of the state's case, notwithstanding the lack of an objection by Ayers' counsel. Dewberry's recanting of his earlier statement implicating Ayers simply necessitated a credibility determination by the trier of fact. It plays no role in our sufficiency analysis.

{¶ 17} Nonetheless the record does contain sufficient evidence to support the trial court's finding of a sale under R.C. 2905.03(C)(3)(a). Upon cross-examination, Ayers'

counsel questioned Officer Coberly about the lack of evidentiary value arising from finding four five dollar bills on Ayers when he was arrested. The following exchange took place:

Q: Okay. And you indicated that you found - - he had four five-dollar bills.

A: Yes.

Q: Okay, all right. And that's unusual. People don't carry around five-dollar bills. Was that unusual to you

A: That was unusual to me, yes.

Q: Okay. If he had two ten-dollar bills, would that have been unusual?

A: I guess under the circumstance when the man says that he paid him two five-dollar bills for the dope, that's what makes it unusual for me.

Q: Okay. Well, he had four five-dollar bills.

A: He sold some more dope.

{¶ 18} In the context of Coberly's testimony, it is clear that "the man" is Dewberry and "paid him" refers to Ayers. Although this paraphrasing of Dewberry's statement is clearly hearsay, there was no objection or motion to strike. In the absence of an objection, the trial court was free to consider this hearsay as substantive evidence of Ayers' culpability. *See Gianalli Evidence*, *supra*, Section 103.5 and the cases cited there. Therefore, the record contains evidence from which the trial court could reasonably conclude that Ayers gave Dewberry the marijuana in exchange for money.

{¶ 19} Thus, we conclude when viewed in a light most favorable to the prosecution, the record contains sufficient evidence, which if believed would convince any rational trier of

fact of Ayers' guilt beyond a reasonable doubt.  Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

(Hon. William H. Harsha, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Michael T. Columbus
Hon. Frances E. McGee